# IN THE COURT OF APPEALS OF IOWA

No. 20-0223
Filed April 1, 2020

**IN THE INTEREST OF M.L.M, O.M., M.E.M., J.M., and C.M.,**
**Minor Children,**

**R.M., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Allamakee County, Linnea M.N. Nicol, District Associate Judge.

A father appeals the adjudication of his children as children in need of assistance. **AFFIRMED.**

Andrew J. Casper of Putnam, Thompson & Casper, P.L.L.C., Decorah, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Whitney L. Gessner of Gessner Law Office, Monona, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

A father appeals the adjudication of his children as children in need of assistance (CINA), contending the State did not prove the adjudicatory grounds by clear and convincing evidence. Finding clear and convincing evidence to support the adjudication on each ground found by the juvenile court, we affirm.

Pertinent provisions of Iowa Code section 232.2(6) (2019) define a CINA as an unmarried child:

> (b) Whose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child.
> (c) Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
> > (1) Mental injury caused by the acts of the child's parent, guardian, or custodian.
> > (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.
> > . . . .
> (d) Who has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides.
> . . . .
> (*l*) Who for good cause desires to have the child's parents relieved of the child's care and custody.[1]

This family came to the attention of the department of human services (DHS) in May 2018 when a report was made that M.E.M., then thirteen years old, disclosed her father had sexually abused her in his home. The parents, at the time

---

[1] The father asserts the court erred in finding M.E.M. was CINA under Iowa Code section 232.2(6)(i). However, that ground was neither alleged nor found. The father does not address section 232.2(6)(*l*), and there is clear and convincing evidence M.E.M. is a child "[w]ho for good cause desires to have the child's parents relieved of the child's care and custody."

of the alleged abuse, were married but separated and were living in separate homes. The children[2] alternated between homes every other week by an informal agreement.

A child-abuse investigation was conducted by DHS child protective worker Sheila Schroeder. The sheriff's office was also contacted. Schroeder arranged to have M.E.M. interviewed at the child protection center (CPC); the interview was video recorded. During the CPC interview, M.E.M. stated her father wanted the children to sleep in his room, but she is not comfortable sleeping with others. M.E.M. stated her father lost his temper when she wanted to sleep in her own room. She reported her father had also slept in her room. She described one time her father was lying in bed behind her, wrapped his arms around her, and then lowered his hand and touched or "finger[ed]" her "lower parts," which she identified as those used to go to the bathroom. She said it made her uncomfortable when her father touched her lower parts and she moved and pushed away. M.E.M. stated her father lost his temper and she cried. She reported she left her father's room and then went into the bathroom and took a number of pills. She informed her school counselor about the incident. M.E.M. also stated her father spanked her with a belt, leaving marks, and that he has put his hands on the pressure points on the back of her neck and squeezed.

When Schroeder spoke with the other children in the household, J.M. confirmed that his father would sleep with the children. J.M. stated that M.E.M. did

_____

[2] The parents have seven children. Two of the children were adults and living away from the family when the family came to DHS's attention. Five children remained at home: M.L.M., born in 2002; M.E.M., born in 2004; O.M., born in 2006; J.M., born in 2008; and C.M., born in 2012.

not want her father to sleep with her but that he would not take no for an answer. J.M. also reported being spanked with a belt by his father.

The father agreed to a safety plan, including a no-contact order with the children. The father was criminally charged. However, after several months and two suicide attempts by M.E.M. in temporal proximity to court dates in the criminal proceedings, the charges were dismissed without prejudice. The State then filed a petition to adjudicate the children CINA.

An adjudication hearing was held on August 14 and 15, 2019, at which numerous witnesses testified, including Schroeder; the DHS social worker, Darla Jones; the deputy sheriff who investigated the sex-abuse allegations, John Grampovnik; the mother; the father; two of their adult children, A.M. and G.M.; and two young peers of M.E.M. The adult children both testified that when they were in the family home, they provided much of the child care for their younger siblings. A.M. testified that when she was in charge of the younger children—like her father—she would use a belt to discipline them. Both of the adult children testified the family was in need of assistance—especially counseling in regards to communication. The mother testified M.E.M. had been exhibiting self-harming behavior for several months prior to her report of sexual abuse. The mother also stated the father told her that when A.M. returned from college, she slept in his bed with him. When the mother stated she found the behavior unacceptable, the father replied that C.M. was in bed with them as well. The mother also testified the father hit J.M. with a belt one time and J.M. "did have marks after that."

The father testified at the adjudication hearing and denied sexual contact with M.E.M. but acknowledged the children did sleep with him. He was asked: "Do

you remember during your interview telling [the detective] that just about every night someone sleeps with me?" The father responded, "I don't remember that, but I know it was a lot of nights that the kids traded out. It was five of them. It was different kids that slept with me." He also acknowledged he disciplined the children with a belt, testifying: "It wasn't to inflict harm on them. It was just—it got to be a symbol."

In its ruling, the juvenile court noted the father's unemotional testimony in regard to his children and his emotional response to problems he was having at work. The court found the father not credible, noting his "tone of voice and pattern of speech throughout his testimony."

The juvenile court observed that A.M.

> testified that the family was dysfunctional, she herself suffered from anorexia bulimia and self-harm, had trouble sleeping, and would hold her breath until she fell asleep. [A.M.] currently participates in fairly intensive psychotherapy . . . . When describing her childhood [A.M.] said, "there was no place to be safe". [A.M.] suffered from severe depression throughout high school. [She] reports her current diagnosis are manifestations of abusive behavior, anxiety, and PTSD. . . . [A.M.] has no direct knowledge of the sexual abuse of [M.E.M.], but she does have unique insight and compelling testimony that the children are subject to emotional abuse at the hands of their parents.

The court described G.M.'s testimony in support of the father as "scripted." The court found,

> [T]he State proved by clear and convincing evidence that [the father] laid down in bed with [M.E.M.], put his arms around her and touched [M.E.M.'s] pubic area and vagina. The court finds that [M.L.M.], [O.M.], [M.E.M.], [J.M.], and [C.M.] have been physically abused, neglected, and emotionally abused by their parents [R.M.] and [E.M.] The findings of neglect and physical abuse are based on the founded abuse report, the testimony of Darla Jones, and the testimony of [A.M.] and [G.M.]

The court concluded, "Continuation of the children in the custody of their father would affect the children's welfare by subjecting them to a father who perpetrated mental injury on the children as well as sexual abuse on [M.E.M.]" The juvenile court found all of the children at issue—M.L.M.,[3] M.E.M., O.M., J.M., and C.M.—to be CINA pursuant to section 232.2(6)(b), (c)(1), and (c)(2). With respect to M.E.M., the court also adjudicated her CINA under section 232.2(6)(d) and (*l*). The father appeals.

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We are not bound by the juvenile court's findings of fact, but we give them weight. *Id.*

In this juvenile proceeding, the State must prove the grounds supporting the CINA adjudication with clear and convincing evidence. Iowa Code § 232.96(2). The father first contends there is not clear and convincing evidence he sexually abused M.E.M. He argues the child was not credible, the child-abuse assessment was "incomplete and inaccurate," and the deputy's investigation was "wholly lacking and flawed with conflict." We have reviewed the pleadings, exhibits, and transcript, and we cannot agree. We find there is clear and convincing evidence supporting the juvenile court's finding that the father "laid down in the bed with [M.E.M.], put his arms around her and touched [her] pubic area and vagina." The child provided a statement about the family's sleeping arrangements, her discomfort with her father being in bed with her, and the sexual contact. The

---

[3] M.L.M. reached the age of majority prior to the entry of the juvenile court's dispositional order and her juvenile case was dismissed for lack of jurisdiction. The appeal as to M.L.M. is likewise dismissed.

sleeping arrangements were corroborated by J.M. and the father himself. The father's testimony acknowledged M.E.M.'s claims with respect to all but the sexual contact. The juvenile court found the child's assertions of sexual abuse to be credible and the father's denials not credible. We give these credibility findings weight.

We also find clear and convincing evidence supporting the findings that the children are at risk of physical or emotional harm or neglect.[4]

Because there is clear and convincing evidence to support the CINA adjudication on each ground, we affirm.

**AFFIRMED.**

---

[4] We have considered each of the father's claims and find them to be without merit, whether or not explicitly addressed.